CA NO. 22-50252

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

   v.

JUAN MANUEL GUTIERREZ,

        Defendant-Appellant.

DC NO. CR 22-78-JFW

---

**APPELLANT'S OPENING BRIEF**

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

HONORABLE JOHN F. WALTER
United States District Judge

CUAUHTEMOC ORTEGA
Federal Public Defender
MARGARET A. FARRAND
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081
Email: Margaret_Farrand@fd.org

Attorneys for Defendant-Appellant

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................1

II.    QUESTIONS PRESENTED ........................................2

III.    STATEMENT OF ADDENDUM ..................................2

IV.    STATEMENT OF JURISDICTION AND CUSTODY STATUS ................2

V.    STATEMENT OF THE CASE ....................................3

    A.    Officers Stop Gutierrez For Standing In An Alley ..............................3

    B.    The Officers Find Fireworks In J.R.'S Backpack ................................7

    C.    The Officers Arrest Gutierrez, Search His Truck, And Find A Gun Modified To Be Automatic ................................8

    D.    Gutierrez Is Prosecuted For Possessing An Automatic Firearm, And Unsuccessfully Moves To Suppress Evidence From The Stop And Search ........................................10

    E.    Gutierrez Enters A Conditional Plea, Preserving The Suppression Issues, And Appeals ..........................................14

VI.    SUMMARY OF ARGUMENT ....................................15

VII.    STANDARDS OF REVIEW ........................................17

VIII.    ARGUMENT..........................................................18

    A.    The Officers' Stop Of Gutierrez Was Unlawful Because It Was Unsupported By Reasonable Suspicion Or Probable Cause ..............18

        1.    The Fourth Amendment requires probable cause for a warrantless arrest and reasonable suspicion for a traffic stop ..18

        2.    The officers arrested Gutierrez—or at least seized him in a *Terry* stop—when Officer Lizardo activated the patrol car's lights and siren and Gutierrez stayed put ..................................19

# **TABLE OF CONTENTS**

**Page**

3.    The officers lacked probable cause or reasonable suspicion for the stop based on Gutierrez's act of standing in the alley...23

4.    The officers also lacked reasonable suspicion based on the open containers, fireworks, and J.R.'s attempted flight ..........26

      a.    The officers did not see the open containers, fireworks, or J.R.'s flight until after they effectuated the stop........................................................................27

      b.    Even if the officers did see the open containers, fireworks, and J.R.'s flight before the stop, those facts were not attributable to Gutierrez ........................33

B.    The Officers' Search Of Gutierrez's Truck Was Unlawful Because The Officers Lacked Probable Cause To Believe The Truck Contained Contraband Or Evidence Of A Crime ...............................36

C.    Because The Stop And Vehicle Search Were Unconstitutional, All Evidence Obtained As A Result Must Be Suppressed.......................42

IX.    CONCLUSION.............................................................................................43

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Alvarez*,
  899 F.2d 833 (9th Cir. 1990) ...............................................................36

*United States v. Bigsby*,
  145 F. App'x 595 (9th Cir. 2005) ........................................................34

*Brendlin v. California*,
  551 U.S. 249 (2007).......................................................................19, 22

*United States v. Brown*,
  925 F.3d 1150 (9th Cir. 2019) .............................................................35

*United States v. Campbell*,
  486 F.3d 949 (6th Cir. 2007) ...............................................................21

*Michigan v. Chesternut*,
  486 U.S. 567 (1988)..............................................................................22

*United States v. Clay*,
  640 F.2d 157 (8th Cir. 1981) ...............................................................33

*United States v. Colin*,
  314 F.3d 439 (9th Cir. 2002) ...............................................................19

*United States v. Crawford*,
  372 F.3d 1048 (9th Cir. 2004) (en banc) .............................................42

*United States v. Debona*,
  759 F. App'x 892 (11th Cir. 2019) ......................................................21

*United States v. Delaney*,
  955 F.3d 1077 (D.C. Cir. 2020)...........................................................22

*United States v. DiCesare*,
  765 F.2d 890 (9th Cir. 1985) ...............................................................27

*United States v. Faagai*,
  869 F.3d 1145 (9th Cir. 2017) .............................................................17

iii

# TABLE OF AUTHORITIES

**Page(s)**

*Arizona v. Gant*,
   556 U.S. 332 (2009) ................................................................41

*Graves v. City of Coeur D'Alene*,
   339 F.3d 828 (9th Cir. 2003) ...............................................37

*United States v. Griffin*,
   884 F. Supp. 2d 767 (E.D. Wisc. 2012) ........................20, 35

*United States v. Guzman–Padilla*,
   573 F.3d 865 (9th Cir. 2009) ...............................................20

*United States v. Harris*,
   604 F. Supp. 3d 309 (E.D. Pa. 2022) ......................21, 27, 36

*California v. Hodari D.*,
   499 U.S. 621 (1991) .........................................................19, 20

*United States v. I.E.V.*,
   705 F.3d 430 (9th Cir. 2012) ...............................................33

*United States v. Job*,
   871 F.3d 852 (9th Cir. 2017) ...............................................18

*United States v. Johnson*,
   856 F. App'x 48 (7th Cir. 2021) ..........................................21

*United States v. Jones*,
   609 F. Supp. 2d 113 (D. Mass. 2009) ..................................22

*Katz v. United States*,
   389 U.S. 347 (1967) ..............................................................18

*United States v. Kerr*,
   817 F.3d 1384 (9th Cir. 1987) ........................................21, 22

*Michigan v. Long*,
   463 U.S. 1032 (1983) ............................................................39

*United States v. Luckett*,
   484 F.2d 89 (9th Cir. 1973) .................................................22

iv

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Magallon-Lopez*,
  817 F.3d 671 (9th Cir. 2016) ..................................................................27

*United States v. Massenberg*,
  654 F.3d 480 (4th Cir. 2011) ..................................................................34

*United States v. Mendenhall*,
  446 U.S. 544 (1980)................................................................................20

*United States v. Morales*,
  252 F.3d 1070 (9th Cir. 2001) ...............................................................42

*Moreno v. Baca*,
  431 F.3d 633 (9th Cir. 2005) .................................................................27

*United States v. Navedo*,
  694 F.3d 463 (3d Cir. 2012) ..................................................................36

*United States v. O'Connor*,
  658 F.2d 688 (9th Cir. 1981) .................................................................37

*Ornelas v. United States*,
  517 U.S. 690 (1996)................................................................................17

*United States v. Perryman*,
  716 F. App'x 594 (9th Cir. 2017) ....................................................41, 42

*United States v. Pettis*,
  591 F. App'x 393 (6th Cir. 2014) ..........................................................21

*United States v. Rodgers*,
  656 F.3d 1023 (9th Cir. 2011) ...............................................................37

*United States v. Ro*ss,
  456 U.S. 798 (1982)................................................................................36

*United States v. Swindle*,
  407 F.3d 562 (2nd Cir. 2005) ..........................................................21, 23

*Thomas v. Dillard*,
  818 F.3d 864 (9th Cir. 2016) .................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

*Torres v. Madrid,*
    141 S. Ct. 989, 995 (2021).................................................................19

*United States v. Valencia-Amezcua,*
    278 F.3d 901 (9th Cir. 2002) ..........................................................18

*United States v. Vandergroen,*
    817 F. App'x 420 (9th Cir. 2020) ............................................39, 40

*United States v. Ventresca,*
    380 U.S. 102 (1965)..........................................................................18

*United States v. Ward,*
    488 F.2d 162 (9th Cir. 1973) ..........................................................21

*Illinois v. Wardlow,*
    528 U.S. 119 (2000)..........................................................................34

*United States v. Washington,*
    490 F.3d 765 (9th Cir. 2007) ..........................................................21

*Alabama v. White,*
    496 U.S. 325 (1990)..........................................................................19

*Wong Sun v. United States,*
    371 U.S. 471 (1963)..........................................................................42

*United States v. Woodrum,*
    202 F.3d 1 (1st Cir. 2000)................................................................21

*Ybarra v. Illinois,*
    444 U.S. 85 (1979)............................................................................33

*United States v. Zapien,*
    861 F.3d 971 (9th Cir. 2017) ..........................................................17

**State Cases**

*Burk v. Extrafine Bread Bakery,*
    208 Cal. 105 (1929) .........................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

*People v. Cox*,
  168 Cal. App. 4th 702 (2008) ....................................................24, 25

*McGough v. Hendrickson*,
  58 Cal. App. 2d 60 (1943) ..................................................................24

*People v. McNeil*,
  96 Cal. App. 4th 1302 (2002) ..........................................................25

*Newton v. Thomas*,
  137 Cal. App. 2d 748 (1955) ............................................................25

*Raymond v. Hill*,
  168 Cal. 473 (1914) ............................................................................25

*Wooldridge v. Mounts*,
  199 Cal. App. 2d 620 (1962) ............................................................25

**Federal Constitutional Provisions, Statutes, and Rules**

U.S. CONST., amend. IV ...........................................................................18

18 U.S.C. § 922 ...........................................................................1, 2, 10, 14

18 U.S.C. § 3231 ........................................................................................2

18 U.S.C. § 3742 ........................................................................................2

28 U.S.C. § 1291 ........................................................................................2

9th Cir. Rule 28-2.7....................................................................................2

**State Statutes and Municipal Ordinances**

Cal. Bus. & Prof. Code § 25620 ..............................................11, 31, 32

Cal. H. & S. Code § 12676 ......................................................................13

Cal. Penal Code § 25400............................................................................9

Cal. Penal Code § 25850..........................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

Cal. Penal Code § 30605 ......................................................................9, 10

Cal. Vehicle Code § 21954 ......................................................................25

Cal. Vehicle Code § 21956 ..............................................................*passim*

L.B.M.C. § 18.48.01 ............................................................................11, 13

L.B.M.C. § 18.48.720 .................................................................................6

## I.  INTRODUCTION

Two police officers stopped Juan Manuel Gutierrez in a residential area of Long Beach, California for peacefully standing in an alley: conduct decades of California case law holds is lawful, is not prohibited by the California Vehicle Code, and cannot form the basis for a traffic stop. After Gutierrez told the officers some fireworks at the scene were his, and that another person was there to sell him fireworks, the officers handcuffed Gutierrez, searched his car, and found a gun modified to make it automatic, which Gutierrez was convicted of possessing in violation of 18 U.S.C. § 922(o). Because the officers lacked reasonable suspicion to stop Gutierrez based on his lawful act of standing in the alley, and lacked probable cause to search his car, this Court should reverse the district court's denial of suppression.

## II.  QUESTIONS PRESENTED

1. Did police have reasonable suspicion to justify a warrantless traffic stop of Gutierrez based on the fact that Gutierrez was standing in an alley in a residential area, when over a century of California case law holds it is lawful for individuals to stand or walk in the street in residential areas, that such conduct is expressly permitted by the California Vehicle Code, and that municipalities may not penalize that conduct?

2. Did police have probable cause to conduct a warrantless search of Gutierrez's car for fireworks, based on Gutierrez's statement that fireworks at the scene belonged to him and that a different person was in the area to sell fireworks to him?

## III.  STATEMENT OF ADDENDUM

Pursuant to Circuit Rule 28-2.7, an addendum setting forth the constitutional provisions, statutes, and rules relevant to this appeal has been filed concurrently with this brief. Ninth Cir. R. 28-2.7.

## IV.  STATEMENT OF JURISDICTION AND CUSTODY STATUS

Gutierrez appeals from his conviction and four-month prison sentence for possessing an automatic firearm in violation of 18 U.S.C. § 922(o). Judgment was entered on October 17, 2022, (ER-4), and Gutierrez timely filed a notice of appeal on October 31, 2022. (ER-171.)[1] The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C.

---

[1] The Excerpts of Record are cited throughout this brief as "[volume]-ER-[page]." Gutierrez has concurrently filed, under seal, a volume containing the Presentence Report and associated documents, cited as "PSR-[page]."

§ 3742. Gutierrez is currently serving his sentence, with a projected release date of May 3, 2023. *See* https://www.bop.gov/inmateloc.

## V. STATEMENT OF THE CASE

### A. Officers Stop Gutierrez For Standing In An Alley

In the late afternoon of July 10, 2021, Gutierrez and a juvenile named J.R. were standing in an alley in a residential area of Long Beach, California. (ER-109, 114.) Gutierrez was visiting a memorial that had been set up in the alley for a recently-deceased friend. The memorial consisted of a small table by the alley wall, on which sat a potted plant, several candles, and a larger cluster of candles on the ground. (Motion to Transmit Physical Exhibit, Defendant's Motion to Suppress, Ex. D ("Kim Footage"), at 2:19) (showing the memorial).[2] Also on the ground, near the memorial, lay a package of fireworks and, by the alley wall, at

---

[2] The two Long Beach Police Department officers who conducted the stop in this case, Hector Lizardo and Sokhoeun Kim, were both wearing body cameras, which recorded the incident. Footage from both officers' body cameras was filed in the district court as Exhibits B and D to Defendant's Motion to Suppress Evidence. (ER-126.) Lizardo's footage was filed as Exhibit B, and Kim's was filed as Exhibit D, to the suppression motion. These recordings, along with Exhibits 1 and 2 to the Government's Opposition to the suppression motion, have been submitted to this Court with a concurrently-filed motion to transmit them as a physical exhibit. Time-stamped transcripts of Lizardo's and Kim's videotapes were also submitted below as exhibits to Gutierrez's motion to suppress evidence, and are included in the Excerpts of Record. (ER-144-164.) For brevity, the officers' body camera tapes are cited in this brief as "Kim Footage at [time stamp]" and "Lizardo Footage at [time stamp]."

least one open container of alcohol. (Kim Footage at 2:19.)[3] The alley wall behind the memorial table was covered with graffiti commemorating the deceased person, evidently written at different times by different people. (Kim Footage at 1:13, 2:19) (showing the alley wall).

Two Long Beach police officers, Hector Lizardo and Sokhoeun Kim, were patrolling the area in their police car. (ER-109, 114.) They drove into the alley and spotted Gutierrez and another person, J.R., standing—in both officer's words—"in the middle of the alley." (ER-109, line 27; ER-114, lines 10-11.)[4] Video footage shows the middle of the alley, where Gutierrez was standing, was at least two truck widths away from the alley wall where the memorial, alcohol containers, and fireworks were located. (Kim Footage at 1:40-1:50, 3:29.)[5]

Upon seeing Gutierrez and J.R. in the alley, Lizardo asked Kim, "stop em?" and Kim said "yep." (Kim Footage at 1:01-1:05.) Lizardo, who was driving, "activated [the patrol car's] forward-facing red lights and siren indicating a

---

[3] The district court found the containers were "up against the wall." (ER-28, lines 10-11; *see also* ER-26, lines 12-13 (finding the containers were "against a nearby wall.")

[4] The district court, likewise, found that Gutierrez and J.R. were standing "in the middle of the alley." (ER-26, line 8.)

[5] The video shows a pickup truck parked parallel to the alley wall, leaving at least enough room for another, equally wide, car to pass between the truck and the middle of the alley. (Kim Footage at 1:40-1:50, 3:29.)

detention." (ER-140.) Gutierrez remained where he was, and did not flee. The officers stopped the squad car within feet of Gutierrez and J.R., immediately yelling "hands in front of the car!" before even exiting the vehicle. (Kim Footage at 1:08-1:11.) Guerrero immediately complied, putting his hands on the hood of the officers' car, while J.R. rode away down the alley on his bike. (Kim Footage at 1:11-1:15.) Officer Lizardo chased after J.R. while Officer Kim, still inside the squad car, slowly opened the door and stepped out, taking approximately four seconds to do so. (Kim Footage at 1:08-1:12; Lizardo Footage at 0:58-1:04.)[6]

At some point before Kim exited the car, he noticed the firecrackers and open containers sitting by the memorial at the alley wall. (ER-98, ¶ 5 (Kim stating that he saw these items "by the time I had gotten out of the police car.")) Lizardo also noticed these things at some point, which he did not specify below: Lizardo's report states that after he "activated [the car's] forward-facing lights and siren, indicating a detention," he "began to look around [and] observed there were open containers of alcoholic beverage[s] against a nearby wall, in violation of 25620(a)

---

[6] This four-second time lapse is clear from Officer Kim's body camera footage, which shows the car stopping at 1:08 and Officer Kim's exit from the vehicle at 1:12. (Kim Footage at 1:08-1:12.)

BP and an open pack of illegal fireworks in violation of 18.48.01 LBMC." (ER-140.)[7]

After Kim exited the patrol car, he told Gutierrez to put his hands behind his head and—when Gutierrez complied—patted down the outside of Gutierrez's clothing. (Kim Footage at 1:31-1:42; ER-27, lines 3-8.) The patdown did not produce any firearms, contraband, or other items. Kim then told Gutierrez to put his hands back on the car's hood and Gutierrez again complied. (Kim Footage at 1:42-1:45.)

While this was happening, Lizardo chased J.R. down the alley and apprehended him. (Lizardo Footage at 1:00-1:10.) As Lizardo walked J.R. back to the car, J.R. admitted to Lizardo that he had fireworks in his backpack. (Lizardo Footage at 1:20-1:38.) The Long Beach Municipal Code prohibits individuals from possessing fireworks. L.B.M.C. § 18.48.720.

When Lizardo and J.R. reached the police car, Lizardo directed J.R. to put his hands on the car's hood, next to Gutierrez. (Lizardo Footage at 1:44-1:47.) Lizardo then looked at Gutierrez and recognized him from prior investigations as a member of the West Side Longo gang who had produced YouTube music videos. (ER-102-03, ¶ 8; ER-29 line 14 - ER-30 line 2.) One of the videos, titled "In Luv

---

[7] "BP" stands for California Business and Professions Code, and "LBMC" stands for Long Beach Municipal Code.

Wit My Burner," shows Gutierrez and other individuals holding what appear to be

firearms in public; however, a disclaimer at the beginning of the video says the

guns are "merely props." (Motion to Transmit Physical Exhibit, Gov. Opp. to

Motion to Suppress, Ex. 2 at 0:01-0:03.) Another video, titled "Chill Out," shows

Gutierrez and others making hand gestures in a residential neighborhood; no

firearms are shown. (Motion to Transmit Physical Exhibit, Gov. Opp. to Motion to

Suppress, Ex. 1.) The residential area in the latter video is located within one mile

of the alley where the stop occurred. (ER-115, ¶ 8; *see also* ER-29 line 24 - ER-30

line 2.)

## B.    The Officers Find Fireworks In J.R.'S Backpack

As Lizardo, Gutierrez, and J.R. all stood around the patrol car's hood,

Lizardo opened J.R.'s backpack and saw that it contained fireworks. Gutierrez said

J.R. was there to "sell me some fireworks." (Lizardo Footage at 1:49-1:53; *see also*

ER-27, lines 20-21.)

Kim walked over to the memorial at the alley wall, where the fireworks lay

on the ground. Gutierrez, still with his hands on the patrol car's hood, said over his

shoulder "I got another one right here, I got another fireworks right here." (Kim

Footage at 2:03-2:10; ER-27 lines 24-25.) Kim replied "ok, alright" and then

remarked, "you guys also got, you know, a cold one right there too," in an apparent

reference to the open alcohol containers against the wall. (Kim Footage at 2:10-

2:14; ER-28 lines 9-11.) Gutierrez replied, "Oh no, that's not mine, that isn't mine." (Lizardo Footage at 2:01-2:03; ER-28 lines 12-13.)

Kim then picked up the package of fireworks by the memorial and yelled "you selling em?" (Kim Footage at 2:30-2:34; Lizardo Footage at 2:20-2:22.) J.R. said, "Naw, that's not mine. All I've got is firecrackers in my backpack." (Kim Footage at 2:34-2:41; Lizardo Footage at 2:22-2:29; ER-28, lines 18-19.) Kim then walked over to a nearby pickup truck and called, "whose car is this?" (Kim Footage at 2:49-2:53.) Gutierrez responded that it was his. (Kim Footage at 2:53-2:55.)

## C. The Officers Arrest Gutierrez, Search His Truck, And Find A Gun Modified To Be Automatic

After taking down Gutierrez's name and birthdate, Lizardo told Gutierrez, "I'm going to take this stuff out of your pockets, ok?" (ER-30, lines 15-16; Lizardo Footage at 4:00-4:05.) Gutierrez said "Yeah, I got my phone here too." (ER-30, lines 21-22; Lizardo Footage at 4:03-4:05.) Lizardo then reached into Gutierrez's pocket and pulled out a car key, then clicked the key fob to produce a responsive beep from the nearby truck. (Lizardo Footage at 4:05-4:10.)

Lizardo then told Gutierrez he was going to search Gutierrez's vehicle for more fireworks, asking Gutierrez several times if the truck contained a firearm. (Lizardo Footage at 4:10-5:10.) Gutierrez shook his head no, as Officer Kim handcuffed Gutierrez's hands behind his back. (Lizardo Footage at 4:50-5:03; Kim

8

Footage at 5:05-5:23.) The district court found that when Lizardo said he was going to search Gutierrez's car, Gutierrez "stated for the first time that, 'I didn't even tell you guys I had fireworks'" and began exhibiting signs of nervousness "including his eyes widening, stuttering, and speaking loudly." (ER-31.)[8]

The officers then had Gutierrez and J.R. sit on the ground by the alley wall, at the opposite end of the garage driveway from where Gutierrez's truck was parked. (Kim Footage at 5:28-5:38; Lizardo Footage at 5:20-5:28.) Gutierrez's hands were still handcuffed behind his back. (*Id.*) Officer Kim entered the police car, where he ran a license check for Gutierrez's truck. (ER-99, ¶ 9; Lizardo Footage at 8:00-9:50.) Then, with Gutierrez still sitting by the alley wall, handcuffed and guarded by Officer Kim, Lizardo searched Gutierrez's car at the opposite end of the driveway. (Lizardo Footage at 10:07-11:50.) Inside, Lizardo found—among other items—a firearm with an aftermarket backplate on the slide that had a conversion backplate, disconnector, and selector rod, making it fully automatic. (ER-105, ¶ 15.) Kim and Lizardo arrested Gutierrez for violating California statutes prohibiting carrying a concealed weapon in a vehicle (California Penal Code § 25400(a)(1)), possessing an assault weapon (California Penal Code §

---

[8] The district court's finding about Gutierrez's eyes widening is clearly erroneous because Gutierrez was wearing sunglasses, rendering his eyes not visible. (Lizardo Footage at 4:33-4:50.)

30605(a)), and carrying a loaded firearm in a vehicle in a public place or on a public street. (California Penal Code § 25850(a)). (ER-105, ¶ 16.)

**D.   Gutierrez Is Prosecuted For Possessing An Automatic Firearm, And Unsuccessfully Moves To Suppress Evidence From The Stop And Search**

On March 8, 2022, Gutierrez was indicted in federal court on a single count of possessing an automatic firearm in violation of 18 U.S.C. § 922(o). (ER-167.) He filed a motion to suppress all evidence recovered as a result of the officers' stop and search, arguing that they lacked reasonable suspicion to stop him, reach into his pocket, or search his car. (ER-121-166.) In particular, Gutierrez argued that California Vehicle Code section 21956(a)—prohibiting walking in the street outside a business or residential district—did not provide reasonable suspicion for the stop because it applies only "outside of a business or residence district" and Gutierrez and J.R. "were in a residential alley." (ER-130.)

In opposition, the government argued that the officers had reasonable suspicion to stop Gutierrez based on his act of "standing in the middle of the alley"—which, it claimed, constituted a violation of California Vehicle Code section 21956(a). (ER-90.) The government emphasized that Gutierrez "was standing in the alley, not off to the side, when the [police] car stopped." (ER-90, n.3.)

The government further argued that, "mere seconds" *after* executing the stop, the officers subsequently learned "new facts" (ER-91 line 28) when they "noticed open containers of alcohol in violation of California Business and Professions Code § 25620(a) and an open package of fireworks in violation of Long Beach Municipal Code § 18.48.01," and saw J.R. attempt to flee on his bicycle. (ER-91, lines 4-11.) "Although the detectives ***initially pulled over to stop defendant from standing in the alley***," the government argued, they *subsequently* obtained reasonable suspicion to investigate this "***new illegal conduct***," because, "within the first few seconds of the stop," they "discovered the fireworks and open alcohol containers," and saw J.R. ride away on his bike. (ER-91) (emphasis added).[9] "[T]hese ***new facts***," the government argued, "provided ample justification for the detectives to expand their investigation, including by arresting [Gutierrez] and searching his person and truck." (ER-91 line 28 - ER-92 line 2) (emphasis added). Those statements unequivocally concede that the stop was based

---

[9] The government further argued that Officer Lizardo "recognized defendant as a West Longo [sic] gang member who had bragged about his possession of firearms." (ER-91 lines 26-28.) But Lizardo's declaration makes clear that he did not recognize Gutierrez as a West Side Longo gang member until much later in the stop, after Lizardo had already chased J.R. down the alley, apprehended him, and brought him back to the police vehicle. (ER-102 ¶ 8) (Lizardo stating, "*[w]hen I returned with J.R. to the police car,* I got a better look at defendant and recognized him as a West Side Longo gang member from some of my prior investigations involving the gang.") (emphasis added).

11

solely on Gutierrez's act of standing in the alley, and that it was not until after the stop had been executed that the officers saw the open containers and fireworks or saw J.R. ride away. In the government's words, this information constituted "new facts" and "new illegal conduct," separate from the claimed violation of Vehicle Code 21956(a) that caused the officers to effectuate the stop. (ER-91.)

The government further argued that Officers Kim and Lizardo had probable cause to search Gutierrez's car under the automobile exception to the Fourth Amendment's warrant requirement, because Gutierrez told them J.R. was there to sell him fireworks, and the officers found fireworks in J.R.'s backpack and on the ground near the memorial. (ER-92-93.) The officers also had probable cause to suspect Gutierrez's truck contained a firearm, the government argued, because Lizardo had seen Gutierrez's "In Luv Wit My Burner" video showing Gutierrez and other alleged gang members carrying what appear to be real firearms in public. (ER-94.) Finally, the government argued that Gutierrez's nervous demeanor after Lizardo told him he was going to search Gutierrez's truck solidified the officers' probable cause that the car would contain a gun. (ER-94.) Alternatively, the government argued that the search of the vehicle was justified as a protective search incident to their stop of Gutierrez. (ER-95 n.5.)

The district court denied the motion to suppress. It ruled that the officers had reasonable suspicion for the stop based on seeing Gutierrez and J.R. "standing in

the middle of the alley, in violation of California Vehicle Code section 21956."
(ER-36, lines 15-17.) The district court also adopted the government's position that
it was only after the stop was effectuated, when the officers "pulled up," that the
officers saw the fireworks and open containers, and saw J.R. ride away. (ER-36,
lines 18-25; ER-91 lines 4-8) (government saying the officers noticed the
fireworks, containers, and saw J.R. ride away after stopping Gutierrez and when
they "pulled up.") Just as the government had stated, the district court found that
"as [the] officers pulled up," J.R. attempted to flee on his bicycle, and "the officers
observed open containers of alcohol in violation of the California Business and
Professions Code, and a package of fireworks in violation of the Long Beach
Municipal Code." (ER-36, lines 18-25.)

The district court further concluded that J.R. volunteered "within 90 seconds
of the stop" that he had fireworks in his backpack, that Gutierrez then said J.R. was
there to sell him fireworks, and that Gutierrez claimed ownership of the other
fireworks by the memorial. (ER-37 lines 1-7.) The information about the
fireworks, the court concluded, gave the officers reasonable suspicion to prolong
the stop while they investigated the sale of fireworks in violation of California
Health and Safety Code section 12676, and possession of fireworks in violation of
Long Beach Municipal Code section 18.48.01. (ER-37 line 21 - ER-38 line 1.) The
district court also concluded the officers had reasonable suspicion to believe

13

Gutierrez might be armed—and to pat him down—because they were in an area frequented by West Side Longo gang members and the alley contained a memorial to a gang member who had passed away. (ER-38 lines 2-6.)

The court also held that Lizardo's search of Gutierrez's pockets for his car keys was justified as a search incident to arrest. (ER-41.) Alternatively, the court concluded that Gutierrez consented to the search of his pocket because Lizardo prefaced the search by saying "I'm going to take this stuff out of your pocket, ok?" and Gutierrez responded "Yeah, I got my phone in there too." (ER-42.)

Finally, the district court concluded that the officers had probable cause to search Gutierrez's vehicle because Gutierrez said the vehicle was his, that J.R. was there to sell him fireworks, and that the fireworks at the scene belonged to him. (ER-44-45.) Based on that information, the district court concluded, the officers had probable cause to believe the vehicle might contain evidence of a crime: specifically, possession of fireworks in violation of the Long Beach Municipal Code. (ER-45.)

## E.     Gutierrez Enters A Conditional Plea, Preserving The Suppression Issues, And Appeals

Gutierrez subsequently pled guilty to the §922(o) charge, pursuant to a plea agreement that preserved his right to appeal from the district court's denial of the suppression motion. (ER-63, 70-71.) He now appeals.

14

## VI.  SUMMARY OF ARGUMENT

The officers' stop of Gutierrez violated the Fourth Amendment because it was unsupported by reasonable suspicion or probable cause. The stop occurred the moment Officer Lizardo activated his patrol car's siren and forward-facing lights to—in Lizardo's words—"indicat[e] a detention," and Gutierrez submitted by staying put. At that moment, the officers knew only that Gutierrez had been standing in the alley. Standing in a street or alley in a residential area is legal in California. California Vehicle Code section 21956(a), on which the district court relied, only prohibits walking in the street *outside* residential and business areas, not residential areas like the one where Gutierrez was stopped. Indeed, pedestrians' right to walk in the street in residential areas is so well-established in California that decades of California case law holds municipalities *may not* prohibit pedestrians from doing so, that any local prohibitions against walking in the street in residential or business areas are preempted by the California Vehicle Code, and that officers cannot claim any reasonable belief otherwise. Because reasonable suspicion is assessed purely based on the facts known to the officers at the moment of the stop—and the only thing the officers knew when they stopped Gutierrez was that he was standing in a residential alley, which is not illegal—the officers lacked reasonable suspicion to stop him.

15

Nor could the stop be justified on the basis of the open containers or firecrackers by the memorial, or J.R.'s attempted flight on his bicycle. First, the officers were not aware of those facts when they conducted the stop by activating the car's forward-facing lights and siren and Gutierrez submitted. Indeed, the government conceded below—and the district court agreed—that the officers only noticed the open containers, fireworks, and J.R.'s flight *after* they effectuated the stop. Second, even assuming the officers did see the open containers and fireworks, and J.R.'s flight, before effectuating the stop (which the evidence and the government's concession refutes) the officers had no reason to attribute those facts to Gutierrez. Gutierrez was nowhere near the fireworks or containers; he was standing in the middle of the alley, at least two truck widths away. And the memorial consisted of items that had clearly been left by numerous people at different times; nothing suggested the fireworks or containers belonged to Gutierrez himself. Nor can J.R.'s attempted flight provide reasonable suspicion as to Gutierrez simply because they were both in the alley.

The officers also lacked probable cause to support the warrantless search of Gutierrez's truck. The district court found probable cause existed because Gutierrez had said the fireworks on the ground were his, and that J.R. was there to sell him fireworks. But even if these facts suggested Gutierrez was violating the law by possessing fireworks, they did not suggest fireworks were likely to be

16

found inside Gutierrez's vehicle. Indeed, the fact that Gutierrez said J.R. was there to sell fireworks *to him*, rather than that he was there to sell fireworks *to J.R.*, pointed away from any suggestion that Gutierrez was harboring additional fireworks in his truck.

Because the officers' stop of Gutierrez was unlawful, all evidence obtained from that stop and the resulting vehicle search should have been suppressed. And because that evidence provided the sole basis for Gutierrez's conviction, this Court should remand to the district court with directions to offer Gutierrez the opportunity to withdraw his guilty plea and permit the government to dismiss the indictment.

## VII. STANDARDS OF REVIEW

This Court reviews the denial of a motion to suppress de novo, and reviews any underlying factual findings for clear error. *United States v. Zapien*, 861 F.3d 971, 974 (9th Cir. 2017). Whether officers possessed reasonable suspicion to support a traffic stop is reviewed de novo. *Ornelas v. United States*, 517 U.S. 690, 696-97 (1996). Whether probable cause existed to support a warrantless vehicle search is also reviewed de novo. *United States v. Faagai*, 869 F.3d 1145, 1149 (9th Cir. 2017).

17

# VIII. ARGUMENT

## A. The Officers' Stop Of Gutierrez Was Unlawful Because It Was Unsupported By Reasonable Suspicion Or Probable Cause

### 1. The Fourth Amendment requires probable cause for a warrantless arrest and reasonable suspicion for a traffic stop

The Fourth Amendment protects citizens against unreasonable searches and seizures, incorporating a strong preference for seizures pursuant to warrants. U.S. Const., amend. IV; *United States v. Ventresca*, 380 U.S. 102, 106 (1965). Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, unless they fall within "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). The government bears the burden of proving that a warrantless search or seizure falls within such an exception. *United States v. Job*, 871 F.3d 852, 860 (9th Cir. 2017).

The Fourth Amendment permits two types of warrantless seizures of individuals' persons, requiring different degrees of justification. First, an officer may arrest a person without a warrant upon probable cause to suspect he has violated the law. *United States v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002). Probable cause requires that "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the [person] had committed a crime." *Id.* (internal citation and quotation omitted).

Second, the Fourth Amendment's "*Terry* stop" exception permits officers to perform a "brief stop" of an individual to investigate criminal activity, when—though lacking probable cause—they have "reasonable suspicion to believe 'criminal activity may be afoot.'" *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). While reasonable suspicion is a less demanding standard than probable cause, *Alabama v. White*, 496 U.S. 325, 330 (1990), it nevertheless requires at least "'specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002) (internal quotation omitted).

**2.      The officers arrested Gutierrez—or at least seized him in a *Terry* stop—when Officer Lizardo activated the patrol car's lights and siren and Gutierrez stayed put**

Gutierrez was seized in an arrest—or at least a *Terry* stop—when Officer Lizardo activated the patrol car's forward-facing lights and siren to "indicat[e] a detention" and Gutierrez complied by not fleeing. (ER-140.) A *Terry* stop occurs upon an officer's "show of authority" that—if not involving physical contact—"in some way restrain[s] the [detainee's] liberty" and results in his submission. *Torres v. Madrid*, _ U.S. _, 141 S. Ct. 989, 995 (2021) (internal citation and quotation omitted); *California v. Hodari D.*, 499 U.S. 621, 626-27 (1991); *see also Brendlin v. California*, 551 U.S. 249, 255 (2007). A person is seized if "a reasonable person

[in the circumstances] would have believed that he was not free to leave." *Hodari D.*, 499 U.S. at 627-28 (internal citation and quotation omitted).

Whether a reasonable person would feel unfree to leave—so as to be seized—depends on several factors. These include "the threatening presence of several officers, the display of a weapon by an officer," officers' wearing of uniforms, "some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). A seizure escalates from a stop to an arrest when a reasonable person would have believed he would "not be free to leave after brief questioning—*i.e.*, that indefinite custodial detention is inevitable." *United States v. Guzman–Padilla,* 573 F.3d 865, 884 (9th Cir. 2009).

Here, the officers effectuated an arrest, or at least a *Terry* stop, of Gutierrez as soon as they activated the squad car's forward-facing lights and sirens to—as Officer Lizardo put it—"indicat[e] a detention," and Gutierrez submitted by not fleeing. (ER-140.) "[I]f the officer commands the person to obey, there has been a seizure within the meaning of the Fourth Amendment," *United States v. Griffin*, 884 F. Supp. 2d 767, 775 (E.D. Wisc. 2012), and lights and sirens clearly constitute such a command. Indeed, no reasonable person targeted in an alley by a police cruiser's activated red lights and a siren would assume he was at liberty to

20

walk away. Numerous courts have so held, deeming activation of police lights and sirens to constitute a *Terry* stop. *See, e.g., United States v. Swindle*, 407 F.3d 562, 566 (2nd Cir. 2005) (officers initiated a *Terry* stop, "when, with overhead emergency lights activated, they tried to pull over [defendant's] vehicle . . . [A]ny reasonable driver would understand a flashing police light to be an order to pull over ..."); *United States v. Woodrum*, 202 F.3d 1, 8-9 (1st Cir. 2000) (flashing of police lights signifies to suspect that stopping is not optional); *United States v. Kerr*, 817 F.3d 1384, 1386 (9th Cir. 1987) (vehicle stops "using flashing lights or a siren" are "clearly fourth amendment seizures"); *United States v. Ward*, 488 F.2d 162, 169 (9th Cir. 1973) ("[I]t is clear that when four federal agents pull a motorist off the road by use of a siren there has been a seizure even though the agents only intended to make a routine investigation.").[10]

Gutierrez was thus subjected to an arrest—or at least a *Terry* stop—the moment the officers activated the lights and sirens to detain him. *Cf. United States v. Harris*, 604 F. Supp. 3d 309, 315 n.4 (E.D. Pa. 2022) (detention undisputedly

---

[10] Courts have likewise found the absence of a Fourth Amendment seizure where officers did *not* activate lights or sirens, or take any other measures to indicate a stop. *See, e.g., United States v. Johnson*, 856 F. App'x 48, 50 (7th Cir. 2021); *United States v. Debona*, 759 F. App'x 892, 898 (11th Cir. 2019); *United States v. Pettis*, 591 F. App'x 393, 395 (6th Cir. 2014); *United States v. Washington*, 490 F.3d 765, 770 (9th Cir. 2007); *United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007).

occurred when officers ordered defendant to stop and raise his hands, and defendant complied.) Gutierrez's absence of flight constituted submission to that show of authority. *Brendlin*, 551 U.S. at 262 (seizure was indicated by passenger's show of submission in staying inside the car); *United States v. Jones*, 609 F. Supp. 2d 113, 126 (D. Mass. 2009) ("A reasonable person would have understood he was not free to leave," when officers "activate[d] the cruiser's sirens and flashing lights," and a *Terry* stop would have occurred at that point if the defendant had not fled.); *cf. Kerr*, 817 F.2d at 1387 (seizure where defendant's act of walking to police car and volunteering information showed he "felt detained").

The fact that the officers blocked Gutierrez's path out of the alley provides even stronger support for the conclusion that Gutierrez was immediately subjected to a Fourth Amendment stop. *See, e.g., Michigan v. Chesternut*, 486 U.S. 567, 575 (1988) (*Terry* stop would have been supported by evidence that police maneuvered their car "to block respondent's course"). Gutierrez's ability to exit the alley was curtailed by the police car from the moment it activated its lights and sirens, clearly "convey[ing] the message that walking away [wa]s not an option." *United States v. Delaney*, 955 F.3d 1077, 1083 (D.C. Cir. 2020). Officers' "target[ing]" their approach to a particular individual—as the officers did here—supports a finding of seizure rather than a routine police encounter. *Id.* at 1084 (internal quotation omitted); *United States v. Luckett*, 484 F.2d 89, 90 (9th Cir. 1973) (defendant was

22

seized when officers waved him over to their car). That Gutierrez and J.R. were doing nothing threatening or illegal, but simply walking in an alley, made the officers' formal approach even more imposing.

Because Gutierrez submitted to the officers under circumstances that would make a reasonable person feel unfree to leave, he was subject to an arrest or a *Terry* stop when the officers activated their forward-facing lights and siren to detain him and he submitted by staying where he was. Whether the officers had probable cause or reasonable suspicion to support the stop must be assessed as of that moment. *Swindle*, 407 F.3d at 567 (agreeing with other circuits that a *Terry* stop "must be justified at its inception")

### 3. The officers lacked probable cause or reasonable suspicion for the stop based on Gutierrez's act of standing in the alley

The facts known to the officers at the time of the stop—when Lizardo activated the lights and siren—came nowhere close to probable cause or reasonable suspicion of illegality. When Lizardo activated the lights and siren, the officers knew only that Gutierrez was walking in the middle of the alley. This point was undisputed below, as the government expressly conceded that the officers "initially pulled over to stop defendant from *standing in the alley*," and only noticed open containers and fireworks, and saw J.R. attempt to flee, after they had already performed the stop. (ER-90-92) (emphasis added)).

The government and district court concluded that Gutierrez's act of standing in the alley itself provided reasonable suspicion that he was violating California Vehicle Code section 21956(a), thus justifying the stop. (ER-36, 90.) But that is wrong as a matter of law. Section 21956(a) only prohibits "walk[ing] upon a roadway *outside of a business or residence district*." Cal. Vehicle Code § 21956(a) (emphasis added). That prohibition does not apply in residential areas like the one where the stop occurred. *Id.*

To the contrary, "[i]t is the settled law in this state that pedestrians . . .*have a right to travel anywhere upon the public highway*." *Burk v. Extrafine Bread Bakery*, 208 Cal. 105, 110 (1929) (emphasis added). California courts have repeatedly so held, affirming that Vehicle Code section 21956's prohibition on walking in the street does not apply in residential areas. In *People v. Cox*, 168 Cal. App. 4th 702 (2008), for instance, the California Court of Appeal held that section 21956 "only restricts pedestrians from walking on roadways *outside of* business or residential districts." *Id.* at 708 (emphasis added). Thus, "the logical implication . . . is that *inside a business or residential district*, a pedestrian may indeed walk in the middle of the road," and contrary municipal ordinances are preempted. *Id.* at 708-09; *see also McGough v. Hendrickson*, 58 Cal. App. 2d 60, 63 (1943) (noting "well settled law" that "pedestrians have a right to travel anywhere upon a public highway in a residence district"). Nor may officers rely on

a good faith mistaken belief that walking in the road is unlawful; they are "reasonably expected" to know the Vehicle Code permits it. *Cox*, 168 Cal. App. 4th at 710.

To the same effect is *People v. McNeil*, 96 Cal. App. 4th 1302 (2002). There, the court ruled invalid an Oakland ordinance prohibiting standing in the roadway, noting that California Vehicle Code § 21954(a) "*allows* pedestrians to walk on public roadways as long as they yield to vehicular traffic" and preempted the contrary Oakland ordinance. *Id.* at 1305-07 & n.2. The court in *Wooldridge v. Mounts,* 199 Cal. App. 2d 620, 623-24 (1962), likewise, invalidated as preempted by the California Vehicle Code a Los Angeles Municipal Code provision prohibiting standing in the roadway "other than in a safety zone or in a cross-walk" so as to interfere with traffic, because the California Vehicle Code preempts the regulatory area of "use of the public roadways" and permits walking in the road so long as the pedestrian yields to vehicles and exercises due care. *See also Newton v. Thomas*, 137 Cal. App. 2d 748, 762 (1955) (invalidating a Gilroy ordinance that prohibited standing in the roadway "if such action interferes with the lawful movement of traffic.") And over a century ago, the California Supreme Court held in *Raymond v. Hill*, 168 Cal. 473, 482 (1914) that pedestrians "have the right to use and traverse the highway at all its points" and to "walk along the roadbed of a highway," and that drivers must exercise due care to avoid them. These authorities

refute any claim that merely walking in the street in a residential area violates Vehicle Code section 21956 or suffices to justify a traffic stop under California law.

The area where Gutierrez was stopped was undisputedly residential, making it lawful for him to walk in streets or alleys there. Lizardo stated, and the district court found, that the alley is located in the clearly-residential area shown in the "Chill Out" video, composed of houses and apartment buildings. (ER-115, lines 5-8 (Lizardo); ER-29 line 24 - ER-30 line 2.) The officers' body camera footage, likewise, shows the alley runs behind houses and apartment buildings, and Lizardo's footage shows the officers driving through residential streets to reach the alley. (Lizardo Footage at 0:00-0:50.)

Because California law entitled Gutierrez to walk in the alley in the residential area where he was stopped—and the government conceded that that conduct provided the sole basis for the stop—the stop was invalid for lack of reasonable suspicion or probable cause. The district court's contrary conclusion was error.

### 4. The officers also lacked reasonable suspicion based on the open containers, fireworks, and J.R.'s attempted flight

Nor did reasonable suspicion exist based on the open containers or fireworks, or J.R.'s attempted flight. *First*, it was undisputed that the officers did not see the fireworks or open containers, or J.R.'s flight, until after they had

26

effectuated the stop. *Second*, even if the officers did notice those facts before the stop (which they undisputedly did not), nothing suggested the fireworks or open containers were possessed by Gutierrez, or that Gutierrez's flight indicated any wrongdoing by Gutierrez that could justify a stop.

> **a.** **The officers did not see the open containers, fireworks, or J.R.'s flight until after they effectuated the stop**

"[T]he facts justifying [a *Terry*] stop must be known to the officers at the time of the stop." *United States v. Magallon-Lopez,* 817 F.3d 671, 675 (9th Cir. 2016); *see also Moreno v. Baca*, 431 F.3d 633, 639-41 (9th Cir. 2005) (same). Subsequently-obtained facts cannot support reasonable suspicion or probable cause. *Magallon-Lopez*, 817 F.3d at 675; *see also United States v. DiCesare*, 765 F.2d 890, 899 (9th Cir. 1985) ("[T]he acquisition of probable cause during an unlawful seizure does not cure the illegality and does not constitute an independent source of probable cause.") Thus, facts noticed by officers after they have already subjected the defendant to a Fourth Amendment seizure have no bearing on whether reasonable suspicion existed to support that seizure. *Harris*, 604 F. Supp. 3d at 316 (stop was not supported by reasonable suspicion where, although officer noticed a bulge in defendant's sweatshirt, the officer "confirmed that he did not see [the] bulge . . . until *after* he had already seized Mr. Harris by ordering him to stop and put his hands up.")

27

Here, it was undisputed that the only fact known to the officers at the time of the stop was that Gutierrez was standing in the alley. (ER-90-91.) The government conceded in its opposition to Gutierrez's motion to suppress that the officers made the stop based solely on Gutierrez's position in the alley, and that they were not even aware of the open containers or fireworks, or J.R.'s attempted flight, until after they had effectuated the stop. The government stated, "the detectives lawfully **stopped [Gutierrez] for a California Vehicle Code Violation** and were **still investigating that violation** when they discovered illegal fireworks," (ER-90) (emphasis added), and that the officers noticed the containers and fireworks, and J.R. riding away, "seconds" **after** conducting the stop. (ER-90-91) (emphasis added); *see also* ER-91, lines 22-26 (government conceding that "the detectives **initially pulled over to stop [Gutierrez] from standing in the alley**, [and] the detectives discovered the fireworks and open alcohol containers . . .and saw J.R.'s attempted flight, **within the first few seconds of the stop**.") (emphasis added). The fireworks, open containers, and J.R.'s flight were, by the government's admission, "new facts" and "new illegal conduct," separate from the claimed violation of Vehicle Code 21956(a) that had caused the officers to effectuate the stop. (ER-91.) It was thus uncontested below that the stop was based purely on Gutierrez's act of standing in the alley, and that the officers did not see the containers or fireworks, or J.R.'s attempted flight, until later.

28

The district court adopted the same position. In ruling that the stop was supported by reasonable suspicion, the district court echoed the government's argument that the officers initially stopped Gutierrez for standing in the alley. (ER-36, lines 14-17.) The district court also adopted the government's position that the officers only saw the fireworks, containers, and J.R.'s flight seconds later, when they "pulled up." (ER-36, lines 18-25 (district court); ER-91 line 4 (government).) This "pulling up," by the government's concession, occurred after the stop. (ER-90-92.)

The government's and district court's conclusion that the stop rested purely on Gutierrez's position in the alley, with the officers only later noticing the containers, fireworks, and J.R.'s flight, is also borne out by all the other evidence in the record: body camera footage, police report, and officers' declarations. The body camera footage shows Officer Kim said "stop em?" and Lizardo said "yeah," as soon as they saw Gutierrez in the alley, well before their patrol car had even cleared a section of wall that obstructed their view of the area where the open containers and fireworks were located, and well before J.R. began to ride away on his bicycle. (Kim Footage at 1:03-04 (officers saying "stop em?" and "yeah" before car clears section of wall that obstructs view of driveway where the memorial sits); Kim Footage at 1:05-1:16 (showing J.R. beginning to ride away after the officers pull up and stop)). The officers thus could not even see the

29

fireworks, open containers, or J.R.'s flight at the moment they decided to "stop em," or Lizardo activated his forward-facing red lights and siren, "indicating a detention." (ER-140.)[11]

The officers' report and declarations further confirm the stop preceded the officers' sighting of open containers, fireworks, or J.R.'s flight. Lizardo's report states that he activated the "forward-facing red lights and siren" "indicating a detention," *because he observed Gutierrez and J.R. standing in the alley*:

> While driving westbound the alley rear of 1535 Summit Avenue, I immediately observed two subjects (Juan Gutierrez and Jared Rodriguez) standing in the middle of the roadway in violation of 21956(a)CVC. I activated my forward-facing red lights and siren indicating a detention.

(ER-140.) It was only later, after the stop had been "indicated"—that Lizardo's report states he "began to look around" and saw the open containers and fireworks

---

[11] Indeed, even if the stop were deemed to occur at some later point, such as when Lizardo yelled "Hands in front of the car!" and Gutierrez complied (Kim Footage at 1:08-1:10), the record shows the officers had not seen the fireworks or containers, or J.R.'s flight, by that point either. J.R. did not flee until several seconds after Lizardo yelled "Hands in front of the car!" (Kim Footage at 1:05-1:16) ("Hands in front of the car" directive several seconds before Lizardo notices J.R. riding away and yells "Hey, bike! Come here!") And Officer Kim's declaration merely says Kim saw the open containers and fireworks at some point before Kim exited the patrol car, (ER-98, lines 5-8))—which he did several seconds *after* the "Hands in front of the car" directive. (Kim Footage at 1:08-1:12.) And Lizardo provided no indication of when he noticed the open containers or fireworks (ER-102) (Lizardo stating only that he "noticed" the items, without saying when).

against the alley wall. (*Id.*) Lizardo's declaration supports the same conclusion. It states:

> As we drove down the alley, ***we saw two people standing in the middle of the alley*** in violation of California Vehicle Code ("CVC") § 21956(a). In Long Beach, alleys are considered roadways, and many have street names and even some residential addresses tied to them. As it is illegal to stand in the middle of a street in any other California city, it is illegal to stand in the middle of an alley in Long Beach under CVC § 21956(a).

(ER-114, lines 10-16.) Although Lizardo's declaration then states "I *also noticed* open containers of alcohol in violation of California Business and Professions Code § 25620(a) and an open package of fireworks," (ER-114 lines 16-19) (emphasis added), it does not say Lizardo saw those things before he effectuated the stop. Indeed, any such contention would be flatly contradicted by Lizardo's report stating the stop was "indicate[d]" based only on seeing Gutierrez in the alley (ER-140), and the government's concession that the stop was based solely on Gutierrez's and J.R.'s act of standing in the alley. (ER-90-91.) And Lizardo says J.R.'s flight occurred only "when we pulled up"—long after the officers spotted Gutierrez in the alley and activated their lights and sirens. (ER-102, lines 20-21, ER-91.)

Officer Kim's declaration likewise states that Kim only noticed the open containers, fireworks, and J.R.'s flight after the officers had effectuated the stop. Kim says:

31

As we drove down the alley, we saw two people standing in the middle of the alley in violation of California Vehicle Code ("CVC") §21956(a). When we pulled up to them, one of the people who had been standing in the alley (later identified as J.R., a minor), took off on his bicycle, appearing to be attempting to flee. Detective Lizardo chased J.R. while I stayed behind with defendant.

**By the time I had gotten out of the police car**, I had seen the open containers of alcohol in violation of California Business and Professions Code § 25620(a) and an open package of fireworks in violation of Long Beach Municipal Code § 18.48.01.

(ER-109 line 26 - ER-110 line 4) (emphasis added). Thus, it was Gutierrez "standing in the middle of the alley" that prompted the initial stop. It was not until the police car "pulled up to them" that J.R. fled, and only by the time Kim "had gotten out of the police car" that he saw the fireworks and open containers. (*Id.*) As the car "pulled up" well after the officers had sighted Gutierrez and activated the lights and siren, and Kim's exit from the car happened a full four seconds *after* Lizardo stopped the car, (Kim Footage at 1:08-1:12), Kim's sighting of the containers and fireworks necessarily happened after the initial stop.

Because the government conceded below that neither officer noticed the open containers or fireworks, or J.R.'s attempted flight, before they effectuated the stop, and the district court correctly so found based on the record, those facts cannot provide reasonable suspicion or probable cause for the stop.

32

> **b.    Even if the officers did see the open containers, fireworks, and J.R.'s flight before the stop, those facts were not attributable to Gutierrez**

Even if the officers had noticed the open containers and fireworks, and J.R.'s flight, before stopping Gutierrez (which the record refutes), those facts could not provide reasonable suspicion or probable cause to stop Gutierrez in any event, because nothing would have suggested to a reasonable officer that Gutierrez personally possessed the fireworks or containers, or was engaging in criminal conduct with J.R., so as to be violating the law. Reasonable suspicion requires a specific, "particularized" suspicion that the individual in question has committed an illegal act; it cannot be a generalized suspicion that someone in the vicinity has done something illegal or illegally possessed an item. *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979) ("The "narrow scope" of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place"); *United States v. I.E.V.*, 705 F.3d 430, 435-37 (9th Cir. 2012) ("The Supreme Court has not allowed a general suspicion of drug activity to provide blanket authorization for frisking anyone in the vicinity."); *United States v. Clay*, 640 F.2d 157, 160-61 (8th Cir. 1981) (rejecting the claim that "evidence of criminal activity within the house being searched justified the police in searching anyone who approached the premises"); *see also*

33

*United States v. Massenberg*, 654 F.3d 480, 488 (4th Cir. 2011) (tip reporting firearms activity in a neighborhood cannot provide reasonable suspicion to stop any individuals in the area).

Indeed, both the Supreme Court and this Court have rejected the notion that an individual's mere proximity to illegal items or conduct is sufficient to confer reasonable suspicion as to that individual. *See, e.g., Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[A]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime."); *United States v. Bigsby*, 145 F. App'x 595, 596-97 (9th Cir. 2005). In *Bigsby*, this Court held that the defendant's presence in a public parking lot in which a suspicious car was stopped was not enough to confer reasonable suspicion that the defendant was committing a crime. *Id.* "To conclude otherwise," this Court said, "would be to 'draw into the law enforcement net a generality of persons unmarked by any really articulable basis for reasonable suspicion'—a practice this court has repeatedly warned against." *Id.* (quoting *United States v. Sigmond-Ballesteros*, 285 F.3d 1117, 1121 (9th Cir. 2002)). The court in *United States v. Griffin*, likewise, found no reasonable suspicion based solely on the fact that defendant was sitting in a car across the street from where a suspicious package was being delivered, as no facts suggested the defendant was linked to the package: "defendant made no effort to approach

34

the residence or the person delivering the package, and briefly watching a postal worker deliver a package to a neighborhood home does not suggest a connection between the watcher and the package." *United States v. Griffin*, 884 F. Supp. 2d 767, 776-77 (E.D. Wisc. 2012).

Similarly here, no particularized facts connected Gutierrez individually to the open containers or fireworks lying many feet away from him by the alley wall—such that a reasonable officer would have suspected Gutierrez personally of possessing them. The containers and fireworks were on the ground by a communally-created memorial, at least two truck widths away from the "middle of the alley" where Gutierrez was standing. (ER-26, line 8; ER-109, line 27; ER-114, lines 10-11.) Gutierrez was not holding, or even touching, any fireworks or open containers. Nothing would have suggested to a reasonable officer that Gutierrez possessed items lying on the ground two truck widths away from where he was standing, by a memorial where it was obvious that numerous different people had been leaving items at various times.

Nor could J.R.'s flight have supported reasonable suspicion as to Gutierrez. Even as to the person who flees, flight alone cannot provide a basis for reasonable suspicion. *United States v. Brown*, 925 F.3d 1150, 1155 (9th Cir. 2019) ("[T]he Supreme Court has never endorsed a per se rule that flight establishes reasonable suspicion.") And there is even less justification to extend J.R.'s flight to Gutierrez,

35

who did not flee, as "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to reasonable suspicion." *Harris*, 604 F. Supp. 3d at 316; *see also United States v. Navedo*, 694 F.3d 463 (3d Cir. 2012). "The Supreme Court has never viewed *Terry* as a general license to detain everyone within arm's reach of the individual whose conduct gives rise to reasonable suspicion" for a stop. *Navedo*, 694 F.3d at 468.

*   *   *

Because the officers lacked reasonable suspicion or probable cause to stop or arrest Gutierrez—based on Gutierrez's walking in the alley, the presence of fireworks or open containers by the wall, or J.R.'s flight—the warrantless seizure was unconstitutional and in violation of the Fourth Amendment.

**B.    The Officers' Search Of Gutierrez's Truck Was Unlawful Because The Officers Lacked Probable Cause To Believe The Truck Contained Contraband Or Evidence Of A Crime**

Apart from the officers' lack of reasonable suspicion or probable cause for the initial stop and arrest of Gutierrez, suppression is independently warranted because the officers lacked justification for their warrantless search of his vehicle.

To be constitutional, a warrantless vehicle search must be supported by probable cause. *United States v. Ro*ss, 456 U.S. 798, 809 (1982). Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Alvarez*, 899 F.2d 833, 839 (9th Cir. 1990)

(internal citation and quotation omitted). It "means more than a bare suspicion"

and requires that "the officer's knowledge of reasonably trustworthy information

[be] sufficient to warrant a prudent person to believe that an offense has been or is

being committed." *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 841 (9th Cir.

2003), *overruled in part on other grounds by Hiibel v. Sixth Jud. Dist. Ct. of*

*Nevada*, 542 U.S. 177, 189 (2004).

Importantly, mere probable cause to suspect a crime has occurred is not

sufficient to support a search of a vehicle; there must also be probable cause to

suspect *contraband or evidence of crime will be found in the vehicle* to be

searched. *United States v. Rodgers*, 656 F.3d 1023, 1029 (9th Cir. 2011) (internal

quotations omitted). "Probable cause to arrest concerns the guilt of the arrestee,

whereas probable cause to search an item concerns the connection of the items

sought with crime and the present location of the items." *United States v.*

*O'Connor*, 658 F.2d 688, 693 n.7 (9th Cir. 1981).

Here, the district court found the officers had probable cause to search

Gutierrez's truck because Gutierrez said the truck was his, that J.R. was there to

sell him fireworks, and that the fireworks at the scene belonged to him. (ER-44 line

20 - ER-45 line 4.) But even assuming these facts were sufficient to give rise to

reasonable suspicion—or even probable cause—that Gutierrez was illegally

possessing fireworks, those facts did not suggest contraband or evidence of that

37

crime would be found *in Gutierrez's vehicle*. No evidence indicated the officers saw any fireworks through the car windows, or had any reason to think additional fireworks would be inside. Indeed, the fact that Gutierrez said J.R. was there to sell fireworks *to him*—rather than that he was there to sell fireworks to J.R.—weighed against any conclusion that Gutierrez had additional fireworks in his car. If Gutierrez had come to the location to buy fireworks, at most that might suggest Gutierrez was in the process of acquiring them; not that he already had them in his vehicle.

The government argued below that the officers additionally had probable cause to believe Gutierrez's car contained firearms because of the two music videos Gutierrez participated in producing, titled "Chill Out" and "In Luv Wit my Burner." (ER-94.) But neither video comes close to meeting the probable cause standard. The "Chill Out" video does not show any firearms at all; it merely depicts Gutierrez and others making hand gestures. (Motion to Transmit Physical Exhibit, Gov. Opp. to Motion to Suppress, Ex. 1.) While "In Luv Wit My Burner" shows what appear to be firearms, a disclaimer at the beginning of the video states, "Any props used in this video that show resemblance to any illegal materials *are merely props* and should not be taken seriously." (Motion to Transmit Physical Exhibit, Gov. Opp. to Motion to Suppress, Ex. 2) (emphasis added). Nor did the officers have any other reason to suspect Gutierrez had guns in his car. Although

38

Officer Lizardo stated that he recognized Gutierrez from the videos (ER-102-03), Gutierrez had no felony record that would have suggested the videos were anything more than fantasy. (PSR-8-10.) In fact, Gutierrez had never been convicted, or even arrested, for possessing a gun or committing any violent act. (PSR-8-10.)[12]

The government further argued below that even if the officers lacked probable cause to believe Gutierrez's car contained contraband or evidence of a crime, the search of the car could alternatively be justified as a protective search for weapons incident to a *Terry* stop. (ER-95 n.5.) For that claim the government relied on *United States v. Vandergroen*, 817 F. App'x 420, 422-23 (9th Cir. 2020), which it described as holding that police can conduct a search of a car even when the occupant is handcuffed and in the back of a police car. (ER-95 n.5.)

But *Vandergroen* is not so broad, and no protective search was justified. Police conducting a *Terry* stop may only conduct a protective search of limited areas of a vehicle if they have reasonable suspicion "that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Though this Court held that standard met in *Vandergroen*, it did so only because the defendant was *not under arrest* at the

---

[12] Gutierrez's only convictions were for the infraction of driving without a license, and for misdemeanor driving under the influence. (PSR-8-10.)

moment of the protective search and could be released at any minute. The

*Vandergroen* court reasoned that although the suspect was handcuffed in the police

car at the time of the search, he could reach for a weapon *if released*: "[a]lthough

Vandergroen was handcuffed and in the back of a police car during the car search,

*he would have gained immediate access to this weapon if the police had released*

*him after finding no open warrants and no weapon on his person*." *Vandergroen*,

817 F. App'x at 423 (emphasis added).

No such concerns were present here. Gutierrez was already fully under arrest

by the time the officers searched his vehicle, as the government conceded below.

(ER-91 line 28 - ER-92 line 2 (stating that the officers "arrest[ed] [Gutierrez] and

search[ed] his person and truck" after concluding that he possessed fireworks); ER-

91-92 (arguing that the presence of fireworks gave the officers "ample

justification" to arrest Gutierrez, even before they searched his truck).) There was

no likelihood that he would be released, as the officers had already determined that

he had violated Long Beach's ordinance against possessing fireworks and had

placed him under arrest by handcuffing him and sitting him on the ground under

guard by Officer Kim, at the opposite end of the driveway from his truck. (Lizardo

Footage at 10:07-11:50.) Nor was there any realistic possibility that Gutierrez

could have managed to gain access to any weapons in the truck under such

circumstances. There was thus no justification for a protective vehicle search. *See,*

40

*e.g., United States v. Perryman*, 716 F. App'x 594, 596 (9th Cir. 2017) (danger required for a protective search under *Long* did not exist where "[b]efore the search, the officers secured [the suspects], handcuffed them, and placed [one] in a patrol car and [the other] by the curb," such that "[t]here was . . . no immediate risk that [either suspect] would gain control of weapons at the time the search was conducted.")

Nor could the automobile search be justified as incident to arrest. To justify a vehicle search incident to arrest, the government must show "the arrestee is unsecured and within reaching distance of the passenger compartment" or "it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (internal citation and quotation omitted). The first prong of this test is unmet because Gutierrez was secured (with his hands handcuffed behind his back), detained, and sitting on the ground under the guard of Officer Kim, nowhere near reaching distance of the passenger compartment of his truck at the other end of the driveway. Nor did the officers have any reason to think Gutierrez was armed, as they had already patted down Gutierrez twice and not found any weapon on him. There was no realistic chance that the handcuffed Gutierrez could somehow have risen to standing position, run past Officer Kim to his truck all the way across the driveway, and

somehow obtained a weapon in his handcuffed-behind-his-back hands from his faraway vehicle.

The second part of the *Gant* test is also unmet, because the crime for which the officers had arrested Gutierrez before searching his vehicle was possession of fireworks. As explained, the officers had no reason to think Gutierrez would have evidence of that offense—that is, more fireworks—inside his car given that Gutierrez had said only that J.R. was present to sell fireworks *to him*. *See* pages 34-35, above; *see also Perryman*, 716 F. App'x at 596 ("Because Perryman was secured in the back of the patrol car and Anthony was secured on the curb, and both were detained for tinted windows and driving with a suspended license, no evidence of which could have been found in the car, the [vehicle] search was constitutionally impermissible.")

## C. Because The Stop And Vehicle Search Were Unconstitutional, All Evidence Obtained As A Result Must Be Suppressed

When a search or seizure is unconstitutional, all resulting evidence must be suppressed as its fruit. *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc) ("It is well established that the Fourth Amendment's exclusionary rule applies to statements and evidence obtained as a product of illegal searches and seizures"); *see also Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963); *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) ("If the initial stop was unconstitutional, then all evidence seized as a result of the stop must be

suppressed as the fruit of the poisonous tree.") Because the deputies obtained Gutierrez's cell phone, the firearms in Gutierrez's car, and all other evidence as a result of their illegal stop and search—indeed, all such evidence was the product of the illegal stop itself—those items should all have been suppressed.

## IX. CONCLUSION

For the foregoing reasons, Gutierrez respectfully requests that this Court reverse the district court's denial of his suppression motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 28, 2023          By _/s/ Margaret A. Farrand_
                                  MARGARET A. FARRAND
                                  Deputy Federal Public Defender
                                  Attorney for Defendant-Appellant

# INDEX OF ADDENDUM

U.S. CONST. amend. IV ........................................................ A1

Cal. Vehicle Code § 21956 ................................................... A2

Cal. Bus. & Prof. Code §25620 ........................................... A3

Long Beach Mun. Code § 18.48.720 ................................... A4

Case: 22-50252, 02/28/2023, ID: 12664377, DktEntry: 6, Page 54 of 59

Amendment IV. Searches and Seizures; Warrants, USCA CONST Amend. IV-Search...

United States Code Annotated
   Constitution of the United States
      Annotated
         Amendment IV. Searches and Seizures; Warrants

U.S.C.A. Const. Amend. IV-Search and Seizure; Warrants

Amendment IV. Searches and Seizures; Warrants

Currentness

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

<Historical notes and references are included in the full text document for this amendment.>

<For Notes of Decisions, see separate documents for this amendment.>

U.S.C.A. Const. Amend. IV-Search and Seizure; Warrants, USCA CONST Amend. IV-Search and Seizure; Warrants
Current through P.L. 117-262. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated California Codes
  Vehicle Code (Refs & Annos)
    Division 11. Rules of the Road
      Chapter 5. Pedestrians' Rights and Duties

West's Ann.Cal.Vehicle Code § 21956

§ 21956. Pedestrian on roadway

Effective: January 1, 2023
Currentness

(a) A pedestrian shall not walk upon a roadway outside of a business or residence district otherwise than close to the pedestrian's left-hand edge of the roadway.

(b) A pedestrian may walk close to their right-hand edge of the roadway if a crosswalk or other means of safely crossing the roadway is not available or if existing traffic or other conditions would compromise the safety of a pedestrian attempting to cross the road.

(c)(1) A peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, shall not stop a pedestrian for a violation of this section unless a reasonably careful person would realize there is an immediate danger of a collision with a moving vehicle or other device moving exclusively by human power.

(2) This subdivision does not relieve a pedestrian from the duty of using due care for their safety.

(3) This subdivision does not relieve a driver of a vehicle from the duty of exercising due care for the safety of any pedestrian within the roadway.

**Credits**

(Stats.1959, c. 3, p. 1688, § 21956. Amended by Stats.2000, c. 833 (A.B.2522), § 10; Stats.2022, c. 957 (A.B.2147), § 12, eff. Jan. 1, 2023.)

Notes of Decisions (125)

West's Ann. Cal. Vehicle Code § 21956, CA VEHICLE § 21956
Current with all laws through Ch. 997 of 2022 Reg.Sess.

---

**End of Document**
© 2023 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**California Business and Professions Code section 25620**

(a) Any person possessing any can, bottle, or other receptacle containing any alcoholic beverage that has been opened, or a seal broken, or the contents of which have been partially removed, in any city, county, or city and county owned park or other city, county, or city and county owned public place, or any recreation and park district, or any regional park or open-space district shall be guilty of an infraction if the city, county, or city and county has enacted an ordinance that prohibits the possession of those containers in those areas or the consumption of alcoholic beverages in those areas.

(b) This section does not apply where the possession is within premises located in a park or other public place for which a license has been issued pursuant to this division.

(c) This section does not apply when an individual is in possession of an alcoholic beverage container for the purpose of recycling or other related activity.

*(Amended by Stats. 2000, Ch. 381, Sec. 1. Effective January 1, 2001.)*

A3

## Long Beach Muncipal Code section 18.48.720 - CFC Chapter 56, Section 5608—Fireworks display.

Section 5608 of Chapter 56 of the California Fire Code is amended by the addition of Sections 5608.2 and 5608.3 to read as follows:

5608.2 Prohibition. Except as hereinafter provided, it shall be unlawful for any person to possess, store, offer for sale, expose for sale, sell at retail, or use or explode any fireworks, provided that the Fire Code Official shall have power to adopt reasonable rules and regulations for the granting of permits for supervised public displays of fireworks by a jurisdiction, fair associations, amusement parks, other organizations or for the use of fireworks by artisans in pursuit of their trade. Every such use or display shall be handled by a competent operator approved by the Fire Code Official and shall be of such character and so located, discharged or fired so as, in the opinion of the Fire Code Official after proper investigation, not to be hazardous to property or to endanger any person.

5608.3 Financial responsibility. Before a permit required by Chapter 1, Section 105.6.63 is issued, the permittee shall file with the Fire Code Official a certificate of insurance issued by an insurance company authorized to transact business in the State of California. Such certificate shall certify that the operations under the permit are covered by the policy. The insurance coverage shall not be less than One Million Dollars for injury or death of one person, One Million Dollars for injury or death to more than one person and One Million Dollars for damage to property in any one occurrence. Should the Fire Code Official decide that the activities of the permittee should be supervised by employees of the Fire Department, then the permittee shall furnish to the Fire Code Official the original or certified copy of the policy of insurance in the amounts above provided. The City of Long Beach, its officers, agents, employees and volunteers shall be named parties insured under said policy insofar as the activities of such officers and employees pertain to operations of permittee under the permit. The policy of insurance shall be approved by Risk Management as to sufficiency and the City Attorney as to form. Upon approval, the policy of insurance will be returned if permittee files a certificate of insurance issued by the insurance carrier. No insurance will be required if the permittee is a public agency.

A4

## CERTIFICATE OF RELATED CASES

Counsel for appellant certifies that she is unaware of any pending case presenting an issue related to those raised in this brief.


DATED: February 28, 2023        */s Margaret A. Farrand*
                                           MARGARET A. FARRAND

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. 32(a)(7)(C) and Circuit Rule 32-1, I certify that this opening brief is proportionally spaced, has a typeface of 14 points or more, and contains approximately 10,325 words.


DATED: February 28, 2023          */s Margaret A. Farrand*
                                  MARGARET A. FARRAND